Vicki Lynn **KIRKPATRICK**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–86–292–CR.

Court of Appeals of Texas,
Fort Worth.

March 17, 1988.
Rehearing Denied April 14, 1988.

Henderson & Snell, P.C., Paul Snell, Fort Worth, for appellant.

Tim Curry, Dist. Atty., with C. Chris Marshall, Betty Stanton and Mike Parrish, Assts., Fort Worth, for state.

Before FENDER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

## OPINION ON REHEARING

FENDER, Chief Justice.

Appellant, Vicki Lynn Kirkpatrick, was convicted by a jury of the offense of murder. *See* TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974). The jury assessed punishment at ninety-nine years' confinement in the Texas Department of Corrections.

We affirm.

On August 22, 1986, Renee Greer, a five-year-old child, was reported missing by her mother. The child was last thought to be playing with Kimberly Arnold, a neighbor, at the Arnold's home. The next day Greer's body was found next to a trash dumpster behind a Sleep Country store at the intersection of Precinct Line Road and West Pipeline Road in Hurst. The child had been manually strangled. Later, about 11 p.m., several Hurst and Watauga police officers went to the Arnold's house where appellant had been living since Thanksgiving of 1985. The Arnolds and appellant agreed to allow the police to search the house. During the search of appellant's room, the officers found a small amount of marijuana and arrested appellant for possession. At the Hurst police station appellant gave a statement in which she admitted killing Renee by grabbing Renee around the neck and squeezing her until she had stopped breathing.

Our original opinion issued in *Vicki Lynn Kirkpatrick v. The State of Texas*, cause number 2–86–292–CR, was delivered on December 10, 1987. This opinion has been withdrawn and the judgment vacated. This court abated the appeal and returned the case to Criminal District Court Number Four, Tarrant County, Texas, for purposes of a hearing to determine whether notice was given to appellant of the State's intention to seek an affirmative finding that a deadly weapon was used in the commission of the offense.

In point of error one, appellant generally contends that the trial court erred in submitting a special issue on the use of appellant's hands as a deadly weapon in the commission of the instant offense. Appellant specifically delineates five reasons supporting this general contention. First, appellant asserts that due process of the law required "notice" be given that the State intends to obtain an affirmative finding as to appellant's use or exhibition of a deadly weapon by way of a special issue submitted to the jury.

The first paragraph of the indictment charged appellant with the murder of Renee Greer, "BY STRANGLING RENEE GREER WITH HER HANDS." *See* TEX. PENAL CODE ANN. sec. 19.02(a)(1). The second paragraph of the indictment charged appellant with, "COMMIT[TING] AN ACT CLEARLY DANGEROUS TO HUMAN LIFE, NAMELY, THE SAID VICKI LYNN KIRKPATRICK DID STRANGLE RENEE GREER WITH HER HANDS, WHICH CAUSED THE DEATH OF RENEE GREER." *See* TEX.PENAL CODE ANN. sec. 19.02(a)(2). The indictment did not allege that hands were a deadly weapon, and it is well recognized that hands are not a deadly weapon per se. *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim.App.1983); *see also Slaton v. State*, 685 S.W.2d 773, 775 (Tex.Civ.App.—Houston [1st Dist.] 1985, pet. ref'd). Appellant pled "guilty," as charged by the indictment, to the offense of murder. Thus, the question arises as to whether appellant re-

ceived notice by some other means than in the indictment that the State would seek an affirmative finding that a deadly weapon was used in the commission of the charged offense. *See Ex parte Patterson,* 740 S.W. 2d 766 (Tex.Crim.App.1987).

■ During the trial court's hearing concerning notice conducted pursuant to our instruction following abatement, Parrish, the prosecutor in the trial of appellant, testified that prior to trial he had communicated a plea offer to appellant's attorney, Kredell. Parrish testified that he further informed Kredell in October, 1986, that if the plea bargain offer was not accepted, the State would ask the jury by special issue to find that the cause of death, being the hands of appellant, was by a deadly weapon. Snell, an attorney appointed to succeed Kredell, testified that he was also informed of the plea bargain and the consequences upon refusal, and that on December 2, 1986, one week before jury selection, Snell refused the plea bargain offer. Both attorneys testified that they were orally given notice, in the above described manner, of the State's intention to seek an affirmative finding as to a deadly weapon. At the close of the hearing on notice following our abatement, the trial judge on the record concluded actual notice was given to appellant's lawyers that the State intended to seek a deadly weapon finding, and that the notice was sufficient to comply with due process requirements. We agree with the trial judge's holding.

■ Appellant next argues that the trial court erred in submitting a special issue as to appellant's use of hands as a deadly weapon and in turn permitting the judgment to reflect the affirmative finding because both the special issue and the judgment failed to use the words "in the commission of the offense." The special issue reads as follows:

Do you find from the evidence beyond a reasonable doubt that the defendant used her hands and that her hands were a deadly weapon as that term is hereinabove defined?

Article 42.12 provides, in relevant part:

Sec. 3g. (a) The provisions of Sections 3 and 3c of this Article do not apply:

. . . .

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.

TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3g(a)(2) (Vernon Supp.1988).

TEX.CODE CRIM.PROC.ANN. art. 42.-12, sec. 3g(a)(2) does not by itself require that the phrase "during the commission of an offense," be specifically asked and answered. Nor does appellant cite any authority for her contention. The case cited by appellant, *Polk v. State,* 693 S.W.2d 391 (Tex.Crim.App.1985) discussed the court's improper entering of an affirmative finding on the judgment where there had been no deadly weapon specifically pled in the indictment nor a submission to the jury of a special issue thereof at the close of the punishment phase of the trial. Nowhere does *Polk* mandate the use of the language "during the commission of an offense."

■ Even assuming the phrase should have been included in the special issue, inasmuch as appellant did not object at trial to the error in the court's charge, appellant has failed to demonstrate how she has suffered "egregious harm" as a result of the error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g). Appellant does not explain how the jury could have found appellant's hands to be a deadly weapon except during the commission of the offense. Appellant was charged with only one offense in only one manner: murder by strangling Renee

Greer with her hands. There was no other person or weapon involved in the charged offense. There was also no mention or indication of any immediate flight therefrom.

■ Appellant further contends the affirmative finding in the judgment is defective because it too fails to recite the phrase "during the commission of the offense." The judgment in relevant part reads: "Findings on Use of Deadly Weapon: AFFIRMATIVE–BY THE JURY–TO–WIT: HANDS." Appellant's reliance on *Ex parte Mendez*, 724 S.W.2d 77 (Tex.Crim. App.1987) (per curiam), for her contention is misplaced. The court of criminal appeals held an affirmative finding is not a recitation of the offense in the judgment with the words "deadly weapon," "firearm used," or other similar phrases added to the offense for which a defendant is convicted. *Id.* at 78. *Mendez* does not expressly or by implication necessitate the use of the phrase "during the commission of the offense."

Moreover, when the words "affirmative" and "finding" are taken together, these words are intended to mean the trier of facts determined that a deadly weapon or firearm was actually used or exhibited during the commission of the offense. *Polk*, 693 S.W.2d at 393. Since the words "affirmative finding" in effect included the phrase "during the commission of an offense," the judgment is not defective for omitting that phrase.

Last, appellant asserts it was improper to submit a deadly weapon finding because hands are not a deadly weapon, and there was insufficient evidence that appellant's hands were used in a manner capable of being a deadly weapon.

The court of criminal appeals held that hands are not a deadly weapon per se, but can become deadly weapons in the manner used depending upon the evidence shown. *Turner*, 664 S.W.2d at 90. *See also Slaton*, 685 S.W.2d at 775–76.

■ In the instant case medical testimony indicated the cause of Greer's death was asphyxiation due to manual strangulation.

Appellant testified she used her bare hands and nothing else to strangle Greer. The autopsy report revealed internal hemorrhaging of the strap muscles, the thyroid gland, and the spinal cord muscles of Greer's neck. We conclude that from this evidence the jury could determine that appellant's hands as used to strangle Greer were indeed a deadly weapon. Appellant's point of error one is overruled.

■ Appellant's second point of error complains of the court's admission into evidence, during the punishment phase, of appellant's confession which showed that she was originally arrested because she possessed marijuana. The State is generally prohibited from proving prior specific acts of misconduct, similar happenings, or extraneous offenses committed by the accused. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983). TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 3(a) (Vernon Supp.1988) specifically provides that during the punishment phase "evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character." In reviewing the record and under the circumstances of the instant case we find no Texas Rules of Evidence supporting the admissibility of appellant's arrest for possession of marijuana. However, we view the error as harmless.

■ The test for harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment assessed. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340, 345 (1972); *Johnson v. State*, 660 S.W.2d 536, 538 (Tex.Crim. App.1983). Appellant pled "guilty" to murder as charged by the indictment. The maximum sentence under the law is imprisonment for life or for any term not more than ninety-nine years. In fact, the jury assessed appellant's punishment at ninety-nine years' confinement. The jury was presented lengthy and detailed evidence of appellant's manual strangulation of a five-year-old child because the small child would

not stop hitting a dresser with a steak knife. The jury heard appellant admit that she discarded the girl's body next to a trash dumpster. Intertwined with appellant's confession to murder, appellant briefly mentioned she was initially arrested for the possession of marijuana. In light of the extensive evidence on the manner in which appellant committed the charged offense, we are of the opinion that an average juror would not have found the State's case as to punishment significantly less persuasive had the extraneous offense not been admitted. Appellant's point of error two is overruled.

The trial court's judgment is affirmed.

KELTNER, Justice, dissenting.

I reluctantly dissent from that part of the majority's opinion which rules that the State need not plead its intention to seek an affirmative finding that Kirkpatrick's hands were used as deadly weapons in the commission of the offense. I believe this ruling misinterprets our court of criminal appeals' opinion in *Ex parte Patterson,* 740 S.W.2d 766, 776 (Tex.Crim.App.1987).

Here, Kirkpatrick complains that the trial court erred in submitting an issue on the use of her hands as deadly weapons in the commission of the offense. Specifically, Kirkpatrick claims that the issue should not have been submitted because she was not given "notice" that the State intended to obtain an affirmative finding that her hands were used as a deadly weapon.

Recently, the court of criminal appeals ruled that due process of law requires that pre-trial notice be given that the State intends to seek a finding that the offense was committed with a deadly weapon. *Id.* at 776. Unfortunately, this case was tried before the court of criminal appeals' decision in *Patterson.* As a result, the State was not aware of the necessity to give formal notice in the pleadings.

However, the State argues that it did give *oral* notice to Kirkpatrick's counsel of its intention to pursue the finding. As stated in the majority opinion, we abated the appeal and remanded the case for a hearing to determine what notice was given. The record from that hearing reflects that the prosecutor did give oral notice of its intention to seek the finding of "deadly weapon." Specifically, notice was given to two court-appointed attorneys during plea bargain negotiations. There is no evidence to suggest that the notice was given in pleading form.

As a result of this evidence, the trial court found that the due process requirements of notice were satisfied.

I do not agree. I interpret the majority opinion in *Patterson* as requiring some formal notice. In this regard, Judge Clinton, speaking for the majority, repeatedly holds that the State must *"plead"* its intention to obtain the finding of deadly weapon. For example, Judge Clinton ruled that the State need not allege deadly weapon as a count in the indictment, but instead stated, "[w]e hold only that the State must *plead* it." *Id.* at 776 (emphasis added). In another portion of the opinion, Judge Clinton wrote:

> We have already found, in effect, that the trial court committed egregious error in submitting the special issue of use or exhibition of a deadly weapon *in the absence of a pleading by the State.*

*Id.* at 777 (emphasis added).

I have grave reservations as to whether an oral notification can ever be sufficient. However, at the very least, notice of the State's intention to seek a finding of a deadly weapon must be in a formal proceeding. If the notice is not contained in a written pleading, it should be presented in a formal oral pleading made in open court so that it is readily apparent from the record.

As a result, I would reform the judgment to eliminate the affirmative finding as to Kirkpatrick's use or exhibition of a deadly weapon during the commission of the charged offense. Otherwise, I would af-

firm the judgment of the trial court.[1]

---

1. I reluctantly reach this conclusion because the State is caught in a time trap. At the time the case was tried, there was no case requiring the State to "plead" the use of hands as a deadly weapon. As a result, the conduct of the State in giving even oral notice is commendable.