Neil Wayne
**HIGGINBOTHAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–87–00422–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 16, 1989.

Allen C. Isbell, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant was convicted for the offense of murder. Tex.Penal Code Ann. § 19.02 (Vernon 1974). After rejecting appellant's "not guilty" plea, the jury assessed punishment at fifty years in the Texas Department of Corrections. We affirm and reform the judgment to delete the affirmative finding of the use of a deadly weapon.

At approximately 4:00 p.m., on May 5, 1986, appellant entered the church offices of the First Methodist Church in downtown Houston. Appellant took the elevator to the fifth floor, carrying a 9 mm. automatic pistol. When he reached the fifth floor and began walking down the hall, he passed several people. Each time he would announce that someone should "call an ambulance." Appellant entered the office of Reverend Anderson, announcing that he was looking for the senior pastor, Dr. Hinson. Appellant made Reverend Anderson escort him to Dr. Hinson's office at gun point. When both men discovered that Dr. Hinson was not in, appellant took Anderson to an empty office where both men began to have a loud discussion. A nearby church worker heard Anderson say, "We've tried to help you ... I know you're serious." This statement was followed by appellant's loud proclamation, "I'm serious. I mean it." The church worker heard the reverend again answer appellant and then a gunshot. Appellant backed out of the room where Reverend Anderson lay dying. He encountered another associate pastor. For an instant, the two men froze, and then appellant slowly leveled the gun at the associate pastor. The associate pastor ducked inside a nearby office and appellant got on the elevator. When appellant reached the ground floor, and the elevator doors opened, he encountered yet another associate pastor. He pointed his gun at the associate pastor and demanded to know Dr. Hinson's whereabouts. When the associate pastor assured appellant that Dr. Hinson was not on the premises, appellant left the building. At about 4:30 p.m., one of appellant's neighbor's saw appellant enter the driveway to appellant's mother's home. The neighbor walked toward appellant and heard appellant say, "I shot a man and I need help, and I'm [the] son of King David, and call Pat Robertson." Appellant then parked his car and disappeared into his house. The scenario which followed encompassed appellant's barricading himself in his house and refusing to leave because he feared the authorities would harm him. During the time that he remained in the house, he talked over the telephone with his next door neighbor. Officers arriving at the scene were able to communicate with appellant over the neighbor's phone and assured appellant he would not be harmed. Appellant subsequently surrendered to the authorities and was arrested. At trial, appellant pled "not guilty" and raised the affirmative defense of insanity.

In point of error one, appellant contends the trial court erred in allowing his record-

ed confession into evidence. Appellant argues that his statement was inadmissible because it was taken in violation of his right to counsel during custodial interrogation under the Fifth and Fourteenth Amendments to the United States Constitution.

Shortly after appellant's arrest, he was taken to the Houston Police Department's homicide division where he met Sergeants Roy Ferguson and Ruben Anderson. The officers escorted appellant to an interview room where he was advised of his *Miranda* rights. Appellant responded that he understood his rights and did not indicate in any manner that he desired counsel. Appellant stated that he was willing to make a statement but that he wished to first speak in tongues. Appellant spoke in a series of incomprehensible words for about twenty seconds. After appellant finished his glossolalia, he told the officers that he "shot a man at the church" and there were witnesses who had seen him do it. At this point, Sergeant Anderson typed up a statutory warning form and the officers escorted appellant to a magistrate in the municipal courts building next door. *See* TEX. CODE CRIM.PROC.ANN. ART. 38.22 § 3 (Vernon Supp.1989). While in the course of being "magistratized",[1] appellant told the magistrate that he would like an attorney but could not afford one. The magistrate told appellant that he would get an attorney in twenty-four hours or at the twenty-four hour hearing and to so advise the district court judge of his desire for the appointment of counsel.[2]

The officers were present during this exchange and, after the warnings were administered, escorted appellant back to the interview room. The officers asked appellant whether he still wanted to talk to them since appellant had indicated that he desired an attorney. Appellant said that he still wanted to talk to the officers; he "knew he would get an attorney at a later

time." The officers then gave appellant a third set of *Miranda* warnings and told him that his statement would be recorded. Upon starting the tape recorder, the officers administered a fourth set of *Miranda* warnings to appellant and asked him if he understood the warnings. Appellant subsequently gave the oral confession which is now challenged.

It is clear that counsel was not present when appellant gave any of the statements mentioned above, including the last one. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court outlined the procedural safeguards that must be taken during custodial interrogation. Included in these safeguards is the requirement that the suspect be told of this right to the presence of an attorney, either retained or appointed. The Court went on to acknowledge that the suspect's right to remain silent and his right to counsel could be waived, but cautioned that when a defendant requests in any manner and at any stage for the presence of counsel, interrogation must cease. Under *Miranda,* an unequivocal request for counsel precludes subsequent police-initiated interrogation. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Bush v. State,* 697 S.W.2d 397 (Tex. Crim.App.1985).

■ Appellant's request was not made during custodial interrogation but was made before a magistrate. In *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the United States Supreme Court held that a request for custodial counsel at an arraignment is not diminished by virtue of asking a judge at such a setting and not the police during a custodial interview. An arraignment, however, is a critical stage in the initiation of formal charges by the State which confers the right to counsel under the Sixth Amendment. *U.S. v. Gouveia,* 467 U.S. 180, 104

---

1. Tex.Code Crim.Proc.Ann. art. 15.17 (Vernon Supp.1989). See also *Watson v. State,* 762 S.W. 2d 591, 594 (Tex.Crim.App.1988).

2. This is the finding made by the trial court at the *Jackson v. Denno* hearing. Although the record shows that, during the motion to sup-

press, the testifying officer stated a variation as to the magistrate's response, there exists evidence to support the current finding. *Hawkins v. State,* 613 S.W.2d 720, 732 (Tex.Crim.App. 1981).

S.Ct. 2292, 81 L.Ed.2d 146 (1984); *Forte v. State,* 707 S.W.2d 89 (Tex.Crim.App.1986). There has been much debate regarding what role an article 15.17 magistrate proceeding plays in the various stages of a criminal prosecution. In *Wyatt v. State,* 566 S.W.2d 597 (Tex.Crim.App.1978), the court held that an article 15.17 hearing, in the absence of formal charges, does not constitute a critical stage of adversarial proceedings. Therefore, no entitlement to counsel as a matter of right exists in such setting. *Id.* at 600. However, in *Nehman v. State,* 721 S.W.2d 319 (Tex.Crim.App. 1986), the court held that the presence of formal charges at an article 15.17 hearing transforms such proceeding into a critical stage and confers a right to counsel. No formal charges were present against appellant at the time of this article 15.17 proceeding, and thus, appellant was not entitled as a matter of right under the Sixth Amendment to the assistance of counsel. However, while counsel is not a matter of right under the Sixth Amendment in this instance, this proceeding is an integral stage in a defendant's invocation of his Fifth Amendment right to counsel to protect him against self-incrimination. Pursuant to *Miranda,* when a defendant requests counsel, counsel must be provided in order to advise a defendant "during any interview with peace officers or attorneys representing the state." *Miranda v. Arizona,* 384 U.S. 436, 445, 470, 86 S.Ct. 1602, 1612, 1625, 16 L.Ed.2d 694 (1966). *See and compare, McGee v. Estelle,* 625 F.2d 1206, 1208 (5th Cir.1980), *cert. denied,* 449 U.S. 1089, 101 S.Ct. 883, 66 L.Ed.2d 817 (1981). Both the magistrate and the police have a duty to ensure that counsel is provided when it has been requested. Tex.Code Crim.Proc.Ann. Art. 15.17 (Vernon Supp. 1989). The State does not dispute that appellant asked the magistrate for appointed counsel and that the magistrate told him he could get counsel later. No testimony from the magistrate explaining the context of this exchange or the reasons in delaying appointment appears of record.[3] It belies common-sense to presume that the words "I would like an attorney but I cannot afford one" were somehow ambiguous. Similar statements such as "Uh, yeah. I think I'd like to do that" or "I think I want a lawyer" are considered facially distinct requests for counsel. *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Jones v. State,* 742 S.W.2d 398 (Tex.Crim.App.1987). *Cf. Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).[4]

**3.** We note that Houston Municipal judges, when acting as magistrates, are empowered to appoint counsel for indigents accused of a felony. Tex. Code Crim.Proc.Ann. art. 2.09 (Vernon Supp. 1989) (defining who are magistrates). However, this appears to be a hollow power rarely, if ever, exercised by them. One critical problem which prevents such exercise is lack of available funding with which to pay appointed counsel. Harris County, which is responsible for such payments, has no mechanism for paying such attorneys appointed by municipal judge magistrates. Arguably, the municipal magistrate could select from willing pro bono attorneys, but such selection depends on happenstance in finding a willing volunteer. So, by default and judicial design, the magistrate power to appoint counsel is effectively denied municipal judges in the City of Houston. Such appointments are made by criminal district judges or justices of the peace. Thus, apparently at the magistrate-warning level in Houston, an accused's chances in getting counsel depends on the luck of the draw. That is, whether the police select a justice of the peace or a municipal judge to give the warning. *Montoya v. State,* 744 S.W.2d 15, 26 (Tex.Crim.App.1987); *Nehman,* 721 S.W.2d at

321; *Bush,* 697 S.W.2d at 403; *Massengale v. State,* 710 S.W.2d 594, 597 (Tex.Crim.App.1986); *Phifer v. State,* 651 S.W.2d 774, 776 (Tex.Crim. App.1983); *Castillo v. State,* 742 S.W.2d 1. But see *Lara v. State,* 740 S.W.2d 823, 829 (Tex. App.—Houston [1st Dist.] 1987, rev. ref'd). Notwithstanding this problem, the record does not demonstrate that any meaningful attempt was made by the officers or the magistrate to make this situation known to appellant after he requested appointment of counsel.

**4.** The court in *Michigan,* noted:

'Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a

Even assuming that appellant's request was ambiguous, it was the magistrate's duty to clarify that request and ascertain appellant's true desires. *Castillo v. State,* 742 S.W.2d 1, 4–5 (Tex.Crim.App.1987) (after pulling out business card and showing it to detective, appellant was taken back to judge who questioned accused about desire to make a statement); *Russell v. State,* 727 S.W.2d 573 (Tex.Crim.App.1987) (when accused's desires are related in equivocal manner, interrogating officers not required to cease interview but must ask specific questions aimed at discovering accused's true desire). *See and compare, Michigan v. Jackson,* 106 S.Ct. at 1410 (Sixth Amendment principles impute the State's knowledge from one state actor to another.). Otherwise, the right to appointed counsel prior to or during custodial interrogation is rendered meaningless. *Accord, Phifer v. State,* 651 S.W.2d 774, 778 (Tex.Crim.App. 1983).

■ The State contends that, under the circumstances, appellant waived his right to counsel. The State notes that before the time of appellant's "request" at the magistrate proceeding, appellant agreed to make a statement without the aid of counsel. According to the State, appellant's comment to the magistrate that "he would like an attorney but couldn't afford one" was an equivocal request for counsel at trial. Thus, when officers Ferguson and Anderson attempted to clarify appellant's "request" and appellant freely gave his statement, the waiver was evident.

Whether or not appellant waived his right to counsel must be assessed from the totality of circumstances, including, but not limited to, appellant's background, experience, age, competency and conduct.[5] *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Watson v. State,* 762 S.W.2d 591 (Tex.Crim.App.1988); *Massengale v. State,* 710 S.W.2d 594 (Tex.Crim. App.1986).

Appellant was twenty-nine years old, lived with his mother and had no history of encounters with the authorities.[6] He was a high school graduate and had taken college classes. His sporadic employment history was marked by turbulent encounters with his colleagues. From high school on, appellant became increasingly psychologically troubled. At one time, he reportedly nearly gave his mother's car to a "Hindu" because he was told if he did not do so he would die on his birthday. In 1984, appellant received psychiatric treatment and was first observed to be speaking in tongues. Appellant heard voices speaking to him which he described as the "devil working through my consciousness." Appellant left psychiatric care against the advice of his physicians. In the fall of 1985, appellant began visiting the senior pastor of his church. The initial visits concerned appellant's desire to be a Christian gentleman but later appellant began to complain about the members of the church staff, including Reverend Anderson, the victim.[7] After the reverend was shot, appellant went home and barricaded himself in his mother's house. He would not surrender without the assistance of "Christian police." When he was arrested, appellant was handcuffed and placed in the back seat of a patrol car and transported to the police station. Dur-

---

defendant who makes an identical request to a judge. The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly.' See also *Arizona v. Roberson,* — U.S. —, 108 S.Ct. 2093 [100 L.Ed.2d 704] (1988).

5. In *Smith v. Illinois,* the court noted that the circumstances *preceding* an equivocal request or the circumstances *surrounding* the request itself are primary factors in assessing waiver.

6. In *Fare v. Michael C.,* the court appeared to attribute special relevance to the fact that the accused had considerable experience with the police and a record of several arrests. Implicit in this assessment is the finding that the accused was no novice to *Miranda* warnings. 442 U.S. 707, 726, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979).

7. According to appellant, members of the church were hiding his wife to be, Zipporah. Appellant also thought that the associate pastors were false prophets who might harm Dr. Hinson. Appellant labeled Dr. Hinson as a member of the Tribe of Levi whom appellant, the son of King David, was meant to protect.

ing the journey, appellant made an unsolicited statement to the officers.[8] At the station, appellant was immediately taken to the interview room, and after receiving the *Miranda* warnings, did not indicate the desire for an attorney. Although he appeared willing to talk, appellant had not received a magistrate's warnings. Therefore, the officers terminated the interview and ushered appellant before a magistrate. It was then, in the presence of the magistrate, that appellant requested counsel but was told to make his request for counsel later. After the magistratization, the officers re-ushered appellant back into the interview room "on their own volition." At the *Jackson v. Denno* hearing, the trial court found that appellant's request for counsel was directed to representation at trial. The trial court also found that the officers subsequently told appellant they were unsure whether he still wanted to talk with them since appellant had indicated that he wanted a lawyer. Appellant agreed to talk to the officers, stating that "he knew he would get a lawyer at a later time." [9]

The totality of the circumstances do not show any waiver of appellant's request for counsel. An accused is entitled to indicate in any manner at any stage of the process that he desires the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Ochoa v. State*, 573 S.W.2d 796 (Tex.Crim.App.1978).

Although appellant, upon the first interview, appeared willing to talk without counsel, we must indulge in the reasonable presumption that when appellant requested counsel from the magistrate, he may have changed his mind. *See Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987); *Michigan v. Jackson*, 475 U.S. at 632, 106 S.Ct. at 1409; *Miranda v. Arizona*, 384 U.S. at 445, 86 S.Ct. at 1612 *Cf Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The evidence does not support the trial court's finding that appellant's request for counsel was directed to representation at trial. Appellant expressed his desire for an attorney but said he could not afford one. As a result of having been told by the magistrate to re-request counsel at a later time, appellant could have been left with the impression that his only right was to trial counsel. *California v. Prysock*, 453 U.S. 355, 364, 101 S.Ct. 2806, 2812, 69 L.Ed.2d 696 (1981) (because lawyers are normally "appointed" by judges, and not by law enforcement officers, the reference to appointed counsel could reasonably have been understood to refer to trial counsel). It is of no moment that the officers, without threats or physical coercion, subsequently sought to "clarify" appellant's wishes.[10] *Edwards v. Arizona*, 451 U.S. at

**8.** Appellant requested that he be arrested by a Christian Officer. The arresting officer, Lieutenant Bielstein, assured appellant he was a Christian officer. Upon arrest, appellant was placed in a patrol car with Officers Boutee and Lakind. En route to Houston Police Headquarters, appellant stated: "I never harmed anyone until now. I wish I never did it." *Chambliss v. State*, 647 S.W.2d 257 (Tex.Crim.App.1983).

**9.** In *Nash v. Estelle*, 597 F.2d 513 (5th Cir.1979) (cited in *Russell v. State*, 727 S.W.2d at 576) the court held it was permissible to continue the interview when the accused expresses both a desire for counsel and a desire to continue the interview. We express no opinion as to whether appellant's first interview with the authorities "carried over" to the second interview to create this type of situation. However, in *Nash*, the type of clarification employed by the officer informed the accused that he could have a lawyer at that time and that the officer would "have

to hold off" and could not talk to him if the accused "wanted a lawyer appointed." Here, despite the lack of clarification from the magistrate, the officers renewed the interview and appeared to merely ask appellant if he still wanted to talk to them since he had requested an attorney. We note also that while the officers knew that appellant requested counsel, whether they believed the request was for custodial counsel or trial counsel is not to be given undue emphasis. *People v. Krueger*, 82 Ill.2d 305, 45 Ill.Dec. 186, 412 N.E.2d 537 (1980).

**10.** Although the events preceding appellant's request could arguably be construed as showing some evidence of waiver, such events must be squared with the circumstances surrounding appellant's request before the magistrate. Because the magistrate possibly misled appellant, we cannot say the totality of circumstances indicated waiver. See footnote 9, infra. The authors LaFave & Israel suggest that statements

483–485, 101 S.Ct. at 1884–85. *See also Arizona v. Mauro,* 481 U.S. 520, 526, 107 S.Ct. 1931, 1935, 95 L.Ed.2d 458 (1987); *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984); *Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Carter v. State,* 742 S.W.2d 398, 406 (Tex.Crim.App.1987). *See and compare, Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

■ Appellant alleges that the trial court's admission of his confession into evidence constituted reversible federal constitutional error. In *Chapman v. California,* 386 U.S. 18, 19–21, 87 S.Ct. 824, 825–827, 17 L.Ed.2d 705 (1967), the Supreme Court of the United States fashioned the test for assessing federal constitutional error. In order for a federal constitutional error to be held harmless, a reviewing court must be able to "declare a belief" that the error was harmless beyond a reasonable doubt and made no contribution to the verdict obtained. *Id.* at 24, 87 S.Ct. at 828. Determination of harmless error requires consideration of the entire record, keeping in mind the probable impact of the confession on the minds of the average jury and not whether one can imagine a single juror who was influenced. *U.S. v. Hasting,* 461 U.S. 499, 509, 516, 103 S.Ct. 1974, 1980, 1984, 76 L.Ed.2d 96 (1983); *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). Factors to be considered in assessing such error are: (1) the importance of such evidence in the prosecution's case; (2) whether such evidence was cumulative; (3) the presence or absence of corroborative or contradictory evidence; (4) whether a limiting or curative instruction was or could have been given; (5) the presence or absence of prosecutorial comments upon such evidence; (6) whether the accused had prior encounters with the law; and (7) the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *Schne-*

*ble v. Florida,* 405 U.S. 427, 430–432, 92 S.Ct. 1056, 1058–1060, 31 L.Ed.2d 340 (1972); *Harrington v. California,* 395 U.S. 250, 253, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969).

Appellant's confession was not the basis of the State's case. Five church members saw appellant carrying the gun, heard the arguments between appellant and the victim, and the gunshot. Appellant told his mother, a friend, and several neighbors that he shot someone. This testimony was before the court. During the journey to police headquarters, appellant told the officers that he harmed a man and wished he hadn't. At police headquarters, appellant's hand revealed the presence of trace metal indicative of having recently shot a firearm. Appellant's weapon, a nine millimeter handgun, was introduced into evidence. The nine millimeter copper-jacketed bullet which killed the victim was also introduced into evidence. There was an abundance of overwhelming evidence demonstrating appellant's guilt. *See e.g., U.S. v. Hasting,* 461 U.S. at 512, 516, 103 S.Ct. at 1982, 1984. The confession was merely cumulative of existing relevant facts; the State did not need this evidence to establish appellant's guilt in committing the crime.

■ At trial, appellant raised the affirmative defense of insanity. TEX.PENAL CODE ANN. § 8.01 (Vernon 1974). When such issue is raised, the jury is called upon to determine whether an accused should be held responsible for his crime or whether his mental condition will excuse holding him responsible. *Graham v. State,* 566 S.W.2d 941, 948 (Tex.Crim.App.1978). Although insanity excuses a defendant from punishment because of his state of mind at the time he committed the criminal act, this does not mean that such conduct does not constitute an offense. *Pesch v. State,* 524 S.W.2d 299 (Tex.Crim.App.1975). Thus, even though the independent evidence sufficiently established appellant's guilt be-

---

which convey the message that appointed counsel cannot be made available until some future time must be scrutinized. Even if such statement is an accurate report, and is not misleading, police must make it very clear that because

counsel cannot be appointed until later, they will have to forego any and all questioning until that time unless defendant waives his right to counsel. W. LaFave & J. Israel, Criminal Procedure § 6.8 (1985).

yond a reasonable doubt, we must nonetheless determine whether the admission of appellant's confession contributed to the jury's implicit finding that appellant failed to prove insanity at the time of the offense. *Baker v. State*, 707 S.W.2d 893 (Tex.Crim. App.1986); *Van Guilder v. State*, 709 S.W. 2d 178 (Tex.Crim.App.1985).

Before the admission of appellant's confession into evidence, the jury heard the circumstances surrounding the offense itself. Such circumstances are reliable factors in assessing a defendant's mental condition. *Graham v. State*, 566 S.W.2d at 949. Appellant was a trained security guard, familiar with the use of firearms. It is apparent that on the day of the crime, appellant knew he was going to shoot someone and that the use of such weapon would cause harm. When he entered the church, he requested church staff members to "call an ambulance." *See and compare Van Guilder v. State*, 709 S.W.2d at 183. He was also deliberate as to his victim. After shooting the reverend, he was confronted by two other church members. Each time he pointed the gun at these individuals but chose not to shoot. Appellant knew that he had committed a wrongful act. Upon leaving the church, "he got in his car and started driving around." Appellant contemplated robbing a convenience store "to get enough money to leave the state to avoid being prosecuted for what he had done."[11] He eventually went home and barricaded himself in his house. He told several people that he shot a man and he knew that the authorities would soon be there to arrest him. *Graham v. State*, 566 S.W.2d at 951. After his arrest, appellant made the unsolicited statement that he had harmed a man and wished he had not done so. While in custody, appellant conducted himself rationally and talked intelligently with Sergeants Ferguson and Anderson. *See e.g., Bingham v. State*, 161 Tex.Crim. 204, 275 S.W.2d 819 (1955). There was also the testimony of a psychiatrist to whom appellant admitted not only that he shot the reverend but that he also knew it was wrong when he did it.

During jury arguments, the prosecutor's references to the confession did not dwell on the content of appellant's statements. Instead, the prosecutor discussed Sergeants Ferguson's and Anderson's impressions regarding appellant's demeanor during the interview. The State also referred to appellant's statement when challenging appellant's expert witness, Dr. Owen. The prosecutor noted that Dr. Owen's insanity determination was made on the basis of three interviews with appellant, almost one year after the offense. The prosecutor argued that the passage of time affected the reliability of the doctor's determination and that the doctor should have considered appellant's hospital records, appellant's statement and witness accounts which were in the doctor's possession. According to the prosecutor, these documents served as a more reliable basis upon which to determine appellant's mental condition as they were made near the time of the offense. The State did not urge the jury to consider appellant's statements as evidence of sanity. Instead, the State's arguments discussed appellant's apparent rational conduct as viewed by third parties and challenged the basis upon which Dr. Owen's made his determination of appellant's mental condition. *See, e.g. Graham v. State*, 566 S.W.2d at 951; *Ross v. State*, 153 Tex. Crim.R. 312, 220 S.W.2d 137, 139, 144 (1949). *See and compare, Wainwright v. Greenfield*, 474 U.S. 284, 297, 106 S.Ct. 634, 642, 88 L.Ed.2d 623 (1986).

Under our present law, the State does not have the burden to negate or disprove appellant's insanity beyond a reasonable doubt. *Van Guilder v. State*, 709 S.W.2d at 181; TEX.PENAL CODE ANN. § 2.04 (Vernon 1974). *But see, People v. Parham*, 490 N.E.2d 65, 141 Ill.App.3d 149, 95 Ill.Dec. 592 (1986); *Smallwood v. State*, 763 P.2d 142 (Okla.Crim.App.1988). Here, the confession was not crucial to the State in rebutting appellant's defense. Additionally, the jury was not instructed to limit consideration of appellant's confession to only the issue of guilt and not to consider the confession in determining the issue of insanity.

---

**11.** This is what appellant stated he did, according to the testimony of Dr. Silverman.

However, since the issue of insanity was appellant's burden, there is nothing in the record to show why appellant did not request such an instruction. *Cf.* Tex.R.Crim. Evid. 105. *See and compare Rose v. State,* 470 S.W.2d 198 (Tex.Crim.App.1971).

Several witnesses testified that appellant told them he had shot a man at the church. In listening to the taped statement, the jury merely heard what had already been said; appellant shot Reverend Anderson. Perhaps the jury could infer that the witnesses' testimony, as well as appellant's statements, were evidence of sanity. But, the jury could also have inferred that the testimony and statement were evidence of insanity. It is most likely the jury simply accepted the confession for what it was—a further indication of his guilt. It is clear the confession had negligible impact on the jury's consideration of the sanity issue; the confession was merely cumulative of existing facts.

There was overwhelming evidence from which the jury could conclude that appellant was not insane. *See and compare, State v. Rice,* 757 P.2d 889, 110 Wash.2d 577 (1988). The confession was not important to the State's case on the issue of insanity and the prosecutor's comments did not substantially prejudice appellant's rights. The jury had ample evidence to determine appellant's guilt and reject appellant's defense of insanity independently from the confession. The jury did so and assessed punishment at fifty years for an offense which otherwise could carry up to life imprisonment and a $10,000 fine. We find the State has met its burden of proving that admission of the taped confession was harmless beyond a reasonable doubt and did not contribute to the conviction or punishment. Tex.R.App.P. 81(b)(2). Because the admission of the confession was harmless error, point of error one is overruled.

■ In point of error two, appellant contends that the trial court erred in overruling his objection to the prosecutor's argument regarding the experience of the State's psychiatric expert, Dr. Nottingham, because such argument was outside the record.

During his trial, appellant presented the testimony of two expert witnesses who testified as to their belief that appellant was insane. In rebuttal, the State presented the testimony of its expert witness, Dr. Silverman, and the report of the State's consulting psychiatrist, Dr. Nottingham. Both of the State's experts determined that appellant was mentally ill but was nonetheless sane at the time he committed the crime. During final arguments, each side discussed the credentials of its expert witnesses. The State discussed the fact that, since 1981, Dr. Silverman had evaluated over five hundred people concerning their sanity. The State prosecutor followed up this argument by discussing Dr. Nottingham's experience as a psychiatrist with the Harris County psychiatric unit since 1970. The prosecutor, in an apparent attempt to distinguish the professional experience between the two psychiatrists, stated that Dr. Silverman's experience with over 500 people since 1981 should be "magnified" with Dr. Nottingham's number of years with the unit.

Statements by counsel will not be considered as reversible error unless the record as a whole reveals that the statements were extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the proceeding. *Brooks v. State,* 642 S.W.2d 791, 798 (Tex.Crim.App.1982). It is well settled that a prosecutor can argue his opinions concerning issues in the case so long as the opinions are based on evidence in the record and do not constitute unsworn testimony. *Solis v. State,* 647 S.W.2d 95, 100 (Tex.App.—San Antonio 1983, no pet.). Here, the prosecutor's remark regarding Dr. Nottingham's comparable experience from years of practice was an opinion based upon a reasonable inference from the record. The prosecutor did not pretend to have special knowledge of any facts outside the record which would convert this statement into unsworn testimony. *McKay v. State,* 707 S.W.2d 23, 36 (Tex. Crim.App.1985); *Ramos v. State,* 419 S.W. 2d 359, 368 (Tex.Crim.App.1967). Point of error two is overruled.

In points of error three, four and five, appellant argues that the trial court erred in submitting to the jury the special issue regarding appellant's use of a deadly weapon. Appellant contends the affirmative finding should be stricken from the judgment because he had no notice that the State would seek such finding and that the use of such finding violated his constitutional right to due process.

In response to a special issue submitted during the punishment phase of the trial, the jury found that appellant "used a deadly weapon, namely a gun" in the commission of the offense. The indictment charged appellant with intentionally and knowingly causing the death of Reverend Anderson by shooting him with a gun, but did not specifically identify the gun as a deadly weapon. A gun is not a deadly weapon per se. *Polk v. State*, 693 S.W.2d 391 (Tex.Crim.App.1985).[12] The Court of Criminal Appeals has held that a defendant is entitled to notice that the State will pursue an affirmative finding as to whether a deadly weapon was used or exhibited during the commission of an offense. *Ex Parte Patterson*, 740 S.W.2d 766, 777 (Tex. Crim.App.1987). Because no notice was of record, we "abated" this appeal and ordered the trial court to hold a hearing to determine whether the State gave appellant appropriate notice. *Kirkpatrick v. State*, 747 S.W.2d 521 (Tex.App.—Fort Worth 1988, no pet.). At the hearing below, the trial court found that the State never announced to appellant or his counsel that it would seek the affirmative finding of a deadly weapon. The trial court also found that appellant's counsel, through pretrial discovery, was aware that the murder weapon in this case was a deadly weapon but concluded that neither appellant nor appellant's counsel were given oral or written notice of the State's intent to seek the affirmative finding.

Article 42.18 § 8(b) of the Texas Code of Criminal Procedure contains a special provision affecting the amount of time a prisoner shall serve where a judgment contains an affirmative finding of a deadly weapon. Pursuant to 42.18 § 8(b), the recipient of such finding:

[I]s not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. All other prisoners shall be eligible for release on parole when their calendar time plus good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less.

The affirmative weapon finding mandates a one-third "flat" time that a prisoner must serve before he is eligible for parole. Although such notice of an intent to seek such finding is not applicable under federal constitutional provisions, our Texas Court of Criminal Appeals has found otherwise under the Texas Constitution. Borrowing from the dissenting opinions of Justice Stevens in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the court in *Ex Parte Patterson* concluded that defendants in criminal prosecutions, when and if convicted, had a protected liberty interest in the opportunity to earn early eligibility for parole. Thus, before the potential prisoner

---

**12.** A "gun" was at one time considered to be a deadly weapon when the same was used as a firearm as opposed to a bludgeon. *Schultz v. State*, 78 Tex.Crim. 549, 182 S.W. 316 (1916). When the current penal code came into existence the Court of Criminal Appeals stated: "our prior opinions on the meaning of 'deadly weapon' do and should have instructional significance under the new Penal Code ... in light of the fact that the Legislature has apparently codified our prior case law definition of the term." *Mosley v. State*, 545 S.W.2d 144, 145–46 (Tex. Crim.App.1976). However, the Court decided not to follow precedent in *Chavez v. State*, 657 S.W.2d 146 (Tex.Crim.App.1983). In *Chavez*, the court stated that a "gun" is not a deadly weapon per se. Thus, for technical pleading purposes, an indictment which pleads the fact that an accused used or exhibited a "gun" must also conclude with a comma and the words "a deadly weapon." It is still unclear to this writer just how an accused could intentionally shoot the life out of his victim at any range with a "gun" and not know that the "gun" so used was a deadly weapon.

can be required to serve "flat time" because of a deadly weapon finding, he must be provided with notice. The court decided that the notice of the seeking of the affirmative deadly weapon finding must be pled somewhere, preferably in the indictment. Judge Miller, in his concurring opinion, noted that the majority "in this day and time" did not require such notice to be in the indictment and concluded that "[a]dequate and timely notice evidenced in the record in some other manner should suffice." *Id.* at 778; TEX.CODE CRIM.PROC.ANN. ART. 28.10 (Vernon Supp.1989). In *Kirkpatrick v. State,* the Forth Worth Court of Appeals held that pretrial oral notice of the State's intent to seek an affirmative deadly weapon finding sufficed for purposes of due process under the Texas Constitution. Such oral notice was capable of being reduced to writing and placed of record. However, *Kirkpatrick* did not stray from the premise that the intended finding must be communicated to the defense. Constructive notice will not suffice. In this instance, the trial court correctly found that, despite awareness through possible pretrial discovery, neither appellant nor counsel received notice of the State's intent to pursue the deadly weapon finding. As a result of the trial court's finding that appellant received no notice, the judgment will be reformed to delete the recitation of the jury's answer to the special issue, and the trial court's affirmative finding made thereon. TEX.R.APP.P. 80(b). Points of error three, four and five are sustained.

In point of error six, appellant contends the affirmative finding that a deadly weapon was used during the commission of the offense should be stricken from the judgment because article 42.12, § 3g(a)(2) is unconstitutionally vague as it applies to him as it does not specify the degree or burden of proof which the State is required to meet in order to show that a defendant used or exhibited a deadly weapon. Because we have determined that the affirmative deadly weapon finding cannot be employed against appellant because he did not receive notice of its intended use, and because we have ordered such finding stricken from the judgment; the instant "vagueness-as-applied" challenge under article 42.-

12 § 3g(a)(2) is now moot. Point of error six is overruled.

In point of error seven, appellant contends the trial court erred in refusing to instruct the jury that, in addition to the normal conditions of probation, the court had the authority to impose a special condition of probation which would have required the appellant to be evaluated for a possible civil commitment to the Harris County Psychiatric Center. The trial court, instead, submitted the following instruction which stated: "if probation is recommended by the jury, the Court may, in addition to the listed and enumerated conditions of probation, impose special conditions of probation as he deems appropriate."

In *Flores v. State,* 513 S.W.2d 66, 69 (Tex.Crim.App.1974), the court stated that "[w]hile it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused or restrictive of the court's authority under the statute." Although not confronted with the exact situation as herein, we have previously held that reversible error may result when a defendant objects to the trial court's failure to include statutory conditions of probation in the jury charge. *Brass v. State,* 643 S.W.2d 443 (Tex.App.— Houston [14th Dist.] 1982, pet. ref'd). However, despite appellant's objection, any error in the court's failure to include the desired probationary terms was clearly harmless and, at this point, is now moot. Probation would only have been possible had the jury assessed punishment at ten or less years. TEX.CODE CRIM.PROC.ANN. ART. 42.12 § 3a (Vernon Supp.1989). Here, the jury assessed punishment at fifty years. *Long v. State,* 681 S.W.2d 840, 844 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). Point of error seven is overruled.

The judgment is affirmed as reformed.