Michael Charles JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 62417.

Court of Criminal Appeals of Texas, En Banc.

Nov. 9, 1983.

Rehearing Denied Dec. 14, 1983.

G. Brockett Irwin, Longview, for appellant.

Hunter B. Brush, Dist. Atty. and William Saban, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury found appellant guilty of delivery of heroin and assessed his punishment at ninety-nine years' confinement.

Appellant contends that the trial court erred in overruling appellant's objection to the introduction of an extraneous offense. We agree that a proper objection should have been sustained[1] but we find that in light of the uncontradicted evidence of appellant's guilt, in light of the criminal record and other evidence revealed to the jury at the punishment stage of the trial, the error was harmless.

Danny Green, a narcotics agent with the Texas Department of Public Safety, was working as an undercover agent on a narcotics investigation in October of 1977. Appellant contacted Green by telephone about a heroin sale. Green and appellant met and appellant handed Green a packet of heroin. Appellant was then arrested. Two eyewitnesses testified for the State. It is undisputed that appellant delivered the heroin directly to Green while Officer York observed the delivery from nearby. Appellant did not offer any evidence.

■ Green testified about his telephone conversation with appellant as follows:

"Q. (By Mr. Thompson) Agent Green, where were you on that day when Michael Charles Johnson called you on October 6th, 1977?

A. I was at my residence.

Q. And what did the Defendant relate to you by way of this telephone conversation that day?

A. He advised me that he had the half ounce of heroin that he stated a half ounce of boy, which is slang for heroin, that we discussed earlier for a thousand dollars.

Q. A thousand dollars?

A. Yes.

Q. And did he relate anything else to you on the telephone that day, Agent Green?

A. We discussed a meeting place where we would meet where I would buy the heroin from him.

Q. And did he tell you that he had a meeting place which he preferred?

---

1. Appellant failed to obtain a ruling on his objection, instead receiving a ruling only on his motion for mistrial.

"MR. IRWIN: Please, Your Honor, at this time I would object to the question and answer given. I would move the Court to instruct the Jury to disregard the question and answer as given for the reason that the answer refers to extraneous offenses, and the answer as given was given for the purpose and would have the result of inflaming prejudice in the minds of the Jurors.

And at this time, Your Honor, I will move for a mistrial.

THE COURT: It is denied.

MR. IRWIN: Thank you, Your Honor."

Appellant sought to remedy his error later by obtaining a signed order from the trial judge stating that the court had known the basis of the objection and had overruled both the objection and motion for mistrial. The validity of this procedure is doubtful. See Art. 40.-09(6)(c), V.A.C.C.P.

A. We both agreed that the same place we had made deals before would be fine with him."

Appellant contends that Green's nonresponsive answer concerning deals made before refers to extraneous offenses and is so harmful as to require reversal. We disagree that reversal is necessary.

■ The test for harmless error, even where the error is constitutional, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment assessed. *Clemons v. State,* 605 S.W.2d 567, 571 (Tex.Cr.App.1980). An examination of the evidence demonstrates that the unresponsive answer did not contribute.

In *Shannon v. State,* 567 S.W.2d 510 (Tex. Cr.App.1978) the defendant was convicted of murder. A witness testified that he had purchased illegal drugs from the defendant. This Court commented that such testimony was not so prejudicial and inflammatory as to warrant reversal. The unresponsive answer in the present case is much less direct than that in *Shannon.* The evidence as to appellant's guilt is completely undisputed. The instant testimony, like that in *Shannon,* was not so prejudicial as to warrant reversal.

Our inquiry must next focus on whether the unresponsive answer might have contributed to the jury's assessment of punishment at ninety-nine years' confinement. *Clemons,* supra. The evidence shows that appellant had been previously convicted of burglary, been assessed a probated term, and had his probation revoked. The jury was informed that appellant's probation officer had filed on appellant for carrying a pistol and possession of marihuana. Reputation witnesses, ranging from Juvenile Probation officers to Adult Probation officers to police officers, testified that appellant's reputation for being a peaceful and law abiding citizen in his community was bad. No testimony of a positive nature was presented about appellant.

We conclude that in view of the overwhelming evidence of appellant's guilt combined with the evidence of prior record and state reputation witnesses there is not a reasonable possibility that the non-responsive answer at the guilt stage might have contributed to the jury's assessment of ninety-nine years' confinement for this delivery of heroin.

No reversible error has been shown; the judgment is affirmed.

TEAGUE, Judge, dissenting.

Michael Charles Johnson, appellant, was convicted by a jury for committing the offense of delivery of heroin, a controlled substance. The jury also assessed punishment at 99 years' confinement in the penitentiary, the maximum possible number of years it could have assessed as punishment. The majority has erroneously concluded the trial court's error in overruling appellant's objection to an unresponsive answer of a prosecution witness, which answer implicitly injected into the cause the subject of extraneous offenses, was harmless error.

The majority, however, correctly observes that the trial court erred by overruling appellant's objection because: "The general rule in all English speaking jurisdictions is that an accused person is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is *now deemed axiomatic and is followed in all jurisdictions.*" *Young v. State,* 159 Tex. Cr.R. 164, 261 S.W.2d 836 (1953). Thus, in Texas at least, there is a general rule of inadmissibility when it comes to the prosecution offering into evidence, either expressly or implicitly, extraneous offenses. Unless an exception is first established by the prosecution, extraneous offenses are always inadmissible evidence. Also see *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App. 1972).

The facts of the commission of the offense reflect the following. Danny Green, a prosecution witness and an employee of the Texas Department of Public Safety, was working in the capacity of an undercover narcotics agent. He was contacted

over the telephone by the appellant. The record then reflects the following questions and answers by the prosecuting attorney and the witness Green:

Q: And what did the Defendant relate to you by way of this telephone conversation that day?

A: He advised me that he had the half ounce of boy, which is slang for heroin, that we discussed earlier for a thousand dollars.

Q: A thousand dollars?

A: Yes.

Q: And did he relate anything else to you on the telephone that day, Agent Green?

A: We discussed a meeting place where we would meet where I would buy the heroin from him.

Q: And did he tell you that he had a meeting place which he preferred?

A: *We both agreed that the same place we had made deals before would be fine with him.* [Emphasis Added].

Appellant's trial counsel immediately objected, "for the reason that the answer refers to extraneous offenses." By formal order of the trial judge, the trial judge states in part the following: "There is no question in the Court's mind but what the basis for Mr. Irwin's objection was brought to the attention of the Court; that the Court disagreed with the objection, and overruled it or denied it, and further denied the Motion for Mistrial based thereon."

In the context in which the answer was given, the only conceivable, plain, and common sense reading of the word "deals," that is contained in the answer, can lead to only one inference: that Green had previously agreed to purchase from appellant controlled substances; in particular, heroin.

The State argues that the word, "deals," only relates to the prior discussions that appellant and Green had had which led up to their meeting on the grocery store parking lot where appellant delivered to Green a quantity of heroin, after which appellant was immediately arrested. However, because the parking lot location was the site of the actual delivery of the heroin, I find implausible the construction the State places upon the word "deals." In the context in which the answer was given, I find that the word, "deals," most certainly does not have an innocuous connotation, as suggested by the State.

I also find that Green, who at the time of trial had been a member of the Department of Public Safety since 1969, and an undercover narcotics officer for approximately three years, knew or should have known not to have given the unresponsive answer he did, which contained an answer implicitly referring to extraneous narcotic offenses committed by appellant. See *Richardson v. State,* 379 S.W.2d 913 (Tex.Cr.App.1964).

The State in the appeal has never contended or established, either expressly or implicitly, that any extraneous offense was admissible against appellant as an exception to the general rule of inadmissibility. The record reflects that appellant neither testified nor offered any evidence whatsoever to rebut any part of the State's case. It was therefore error for the trial court to overrule appellant's objection. Also see *Hines v. State,* 571 S.W.2d 322 (Tex.Cr.App. 1978); *Logan v. State,* 510 S.W.2d 598 (Tex. Cr.App.1974); *Okra v. State,* 507 S.W.2d 220 (Tex.Cr.App.1974).*

---

* The majority in footnote 1 of its opinion appears to take issue with the way appellant has established that his objection was overruled by the trial court. However, not mentioned by the majority is the fact that the prosecution to this day has never taken issue with the way the appellant had the record speak the truth. It also appears to me that the trial court had the authority to do as it did in order to make the record speak the truth. See Art. 40.09, Sec. 7, V.A.C.C.P.

I also observe that the majority in its disposition of appellant's contention relies upon *Shannon v. State,* 567 S.W.2d 510 (Tex.Cr.App. 1978), as authority. Its reliance is sorely misplaced, especially when one considers that this Court expressly stated in *Shannon* the following: "The objection voiced by appellant at the trial is general, and does not comport with the contention he now makes on appeal; *nothing is presented for review.*" [Emphasis Added]. Anything this Court stated after this statement, which related to the contention under discus-

Contrary to the majority, I cannot state that there is a reasonable possibility that the inadmissible evidence was harmless error, especially when one considers the fact that appellant received as punishment from the jury the maximum possible term of years provided by law. I believe that in the jury's assessment of punishment, it is quite conceivable that the jury could have been swayed by the suggestion that appellant had frequently in the past dealt in the delivery of the illicit controlled substance heroin.

The judgment should be reversed and not affirmed. I dissent.

ONION, P.J., and CLINTON and MILLER, JJ., join.

sion, is pure and simple dictum, and lacks the force of an adjudication. See *Black's Law Dictionary* 409 (1979 Edition).