Henry Dartanion THIGPEN, Appellant,

v.

The STATE of Texas, State.

No. 2-85-020-CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 2, 1986.

John Hagler, Dallas, for appellant.

Henry Wade, Crim. Dist. Atty., and John D. Nation, Asst. Dist. Atty., Dallas, for the State.

Before FENDER, C.J., HOPKINS, J., and HUGHES, J. (Retired) Sitting by Assignment.

## OPINION

FENDER, Chief Justice.

This is an appeal from a conviction for attempted murder under TEX. PENAL CODE ANN. sec. 15.01 (Vernon 1974) and sec. 19.02 (Vernon 1974). Appellant, Henry Dartanion Thigpen, pled not guilty. The jury found him guilty and assessed his punishment at life imprisonment in the Texas Department of Corrections.

We affirm.

A brief statement of the facts is necessary.

Linda Tedford, the complainant in this case, testified that she was watching television on February 4, 1983, when appellant, Henry Dartanion Thigpen, the manager of her apartments, came to her apartment to spray for bugs. As he left he said, "Oh, you have some mail down by the office." When Tedford went to get the mail, appellant, who was holding a pistol, said, "I lied. You don't have any mail. I was paid to kill you." When Tedford asked him, "For what?" he said, "For money."

Tedford testified as to a chain of bizarre events which followed during which she was handcuffed, blindfolded, and gagged and choked with a string. Tedford testified that she was left standing in the hallway for a moment as appellant went into another room. She ran to a window and

broke it, but could not get outside. She testified that appellant grabbed her and threw her to the floor and, she thought, hit her in the head. It was later ascertained that she had been shot in the head. Appellant removed her handcuffs and when appellant again left the room, Tedford got up, climbed out a window and ran to Red Coleman's store nearby and there she asked for help and lay down. She was still conscious when the police came. She told the police that the manager "did it," and gave officers the address of the apartment complex.

The police officers went to the apartment and found the windows Tedford had broken while escaping. Appellant was there, wearing a shirt with spots of blood on its front.

At trial, defense counsel questioned Tedford about whether she had any enemies and whether she believed anyone wanted to kill her. She answered "No." The prosecutor then questioned her about how she had been raped in 1980 at the same apartment complex by someone other than appellant. Tedford testified that appellant was not the one who had raped her.

Tedford testified that she had felt scared during the lunch break of the previous rape trial because the rapist's friends and relatives gave her "a dirty look" and she "didn't know if his people would do anything." Defense counsel objected to the introduction of this prior rape incident on the grounds that it was not connected or linked to appellant.

During closing argument, the prosecutor brought up motive and questioned whether someone "put him [appellant] up to it."

In his first ground of error appellant complained that the testimony regarding the prior rape was not admissible to establish motive. Appellant contends that the testimony must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the alleged offense before it is admissible. He contends that because the testimony did not fairly tend to raise an inference in favor of a motive, reversible error was committed.

Linda Tedford, the complainant, testified that Henry Thigpen had told her, prior to the vicious attack which he made upon her, that he had been paid to kill her. On cross-examination, Thigpen's counsel asked her if she believed that Thigpen's motive was that he had been hired to kill her. She replied that she could not think of anyone that would want to kill her. Counsel then asked her if she had ever made any enemies and she replied that she did not have any. Counsel again asked her if she could not think of anyone that would be her enemy and she testified that she could not. On redirect examination, the State elicited testimony that she had moved out of these same apartments in August, 1980, because she had been raped there by someone other than Thigpen. She told the jury that when she testified at the trial the rape defendant's "people" gave her a dirty look. The attempted murder occurred ten days after she moved back into the apartments. We find this testimony to be a reasonable clarification of the complainant's answer to the question *asked by Thigpen's counsel* as to whether she had ever had any enemies. This was not testimony as to an extraneous offense on the part of Thigpen, because she clearly related to the jury that it was not Thigpen who had committed the rape. Her original answer had left the impression that no one in the world would have had any reason to kill her. She clarified her response by showing that a few years before, just before moving out of the very apartments she had moved back into just ten days prior to the attempted murder, that she had been raped and had possibly angered the rapist's family by testifying against him. The testimony was relevant to the question as to whether the complainant had any enemies, an issue which was raised by her testimony that Thigpen said he had been hired to kill her and an issue which had been raised by the questions of Thigpen's counsel.

Even if the admission of this testimony were error, it is harmless error. The test for harmless error in the admission of evidence, even where the error is constitution-

al, is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction or affected the punishment assessed. *Johnson v. State,* 660 S.W.2d 536, 538 (Tex.Crim. App.1983). In this case, the complainant's physical condition and the physical evidence corroborated her version of what had happened to her. Her immediate outcry after the vicious attack was that "the manager" of her apartment did it. She knew him before the attack. She had a significant period of time to observe him during the attack. She identified him at trial. The attack occurred in the office of the apartment, a place to which few had access other than Thigpen and his wife. The complainant was handcuffed and Thigpen had handcuffs and a handcuff key. Blood found on the top portion of Thigpen's shirt matched that of the complainant, which is indicative that it was her blood because only 48 out of every 100,000 Caucasians would have matching blood. Thigpen's blood did not match the blood on the shirt.

The only conflicting evidence at all was from a woman who had been befriended by Mrs. Thigpen. She testified that the complainant had told her in the hospital right after the attack that two men had done it. The complainant denied her testimony, saying that she had told the witness the manager had done it. Thigpen himself did not testify. An examination of this evidence demonstrates that there is no reasonable possibility that the evidence complained of might have contributed to Thigpen's conviction. *See id.*

We must further inquire as to whether there is a reasonable possibility that the evidence complained of might have contributed to the jury's assessment of punishment at life. The evidence showed a vicious crime committed for money by Thigpen, who had previously been convicted of the offenses of first degree robbery, forcible rape, second degree burglary, and attempted rape, all in the State of Missouri. Although there were witnesses who testified as to Thigpen's good character, in view of the vicious and commercial nature of the attack and in view of Thigpen's prior record, we would conclude that there is not a reasonable possibility that the evidence complained of might have contributed to the jury's assessment of punishment at life. *See id.* Appellant's first ground of error is overruled.

In ground of error number two, Thigpen complains, on grounds of hearsay, of the admission into evidence of the complainant's oral statement to the officer who first found her shortly after the offense that "the manager did it, the manager did it."

Statements made while in the grip of violent emotion, excitement or pain, and which relate to the exciting event, are admissible under the rationale that the capacity for reflection necessary to the fabrication of a falsehood is lost. *King v. State,* 631 S.W.2d 486, 491 (Tex.Crim.App.), *cert. denied,* 459 U.S. 928, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982). Under the facts of this case, we find no error in the admission of this statement. The case of *Sellers v. State,* 588 S.W.2d 915, 919 (Tex.Crim.App. 1979), relied upon by Thigpen, did not involve a statement made immediately after the exciting event and did not relate to an exciting event. Appellant's second ground of error is overruled.

The judgment is affirmed.